IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES LEE LEVAN, Jr., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-057-O |
| | § | |
| BOBBY LUMPKIN, | § | |
| Director, TDCJ-CID, | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Charles Lee Levan, Jr., ("Levan"), a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Respondent Bobby Lumpkin, director of that division. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the § 2254 petition must be **DISMISSED** with prejudice as time-barred, and alternatively, as to ground four, **DENIED**.

**I.   BACKGROUND**

Levan is in custody pursuant to the judgment and sentence of the 29th Judicial District Court of Palo Pinto County, Texas, in cause number 11,625. CR 41–43, ECF No. 14-1.[1] Levan was charged by indictment with the offense of murder. *Id.* at 1. He pleaded not guilty, but a jury found him guilty. *Id.* at 31, 41. On April 12, 2001, the jury assessed Levan's sentence to be thirty-five years of imprisonment and a $10,000 fine. *Id.* at 38, 41–42.

---

[1] "CR" refers to the Clerk's Record of pleadings and documents filed with the trial court in cause number 11,625 and followed by the relevant page numbers.

The Eleventh Court of Appeals of Texas affirmed Levan's conviction on November 21, 2002. *Levan v. State*, No. 11-01-00219-CR (Tex. App.—Eastland Nov. 21, 2002, pet. ref'd). The Texas Court of Criminal appeals (TCCA) refused Levan's petition for discretionary review (PDR) on March 5, 2003.[2] *Levan*, PD-2167-02.

Almost twenty years later, Levan signed his state habeas application challenging his holding conviction for murder on March 28, 2022. SHCR-01 at 26, ECF No. 14-20.[3] The district clerk file-stamped the application on April 4, 2022.[4] SHCR-01 at 11, ECF No. 14-20. On December 7, 2022, the TCCA denied the petition without written order on the findings of the trial court without hearing and on the court's independent review of the record. SHCR-01 at "Action Taken" Sheet, ECF No. 14-17. Levan constructively filed the instant § 2254 petition and supporting brief on January 10, 2023.[5] Pet. 10, ECF No. 1; Brief 37, ECF No. 2.

## II.    Statement of Facts

---

[2] See Texas Courts Online, available at https://search.txcourts.gov/Case.aspx?cn=PD-2167-02&coa=coscca (last visited September 26, 2023) (official internet site of the CCA showing Levan's PDR was refused on March 5, 2003).

[3] "SHCR" refers to the clerk's record of the state habeas pleadings in *Ex parte Levan*, No.WR-93,774, with a "-01" or "-02" indicating the writ number and followed by the relevant page numbers.

[4] "[U]nder Texas law the pleadings of pro se inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities." *Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013). The state form petition, however, does not require the petitioner to provide a date on which he submitted his application to the prison mail system. Levan signed his state habeas application on March 28, 2022, and the district clerk file-stamped the application on April 4, 2022. SHCR-01 at 11, 26, ECF No. 14-20. The Court will use the earliest date for purposes of the limitations analysis.

[5] A pro se petitioner's federal habeas petition is deemed filed, for purposes of determining the applicability of AEDPA, when he delivered the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 375 (5th Cir. 1998). Levan certified that he placed his § 2254 petition and brief in the prison mailing system on January 10, 2023. Pet 10, ECF No. 1; Brief 37, ECF No. 2.

The Opinion from the Eleventh Court of Appeals of Texas summarized the facts as follows:

> The indictment alleged that [Levan] intentionally or knowingly caused the victim's death by shooting her with a firearm on or about October 20, 2000. [Levan] gave a written statement to the police on the morning after the shooting detailing his relationship with the victim and his version of the incident in question. [Levan] and the victim had been involved in a stormy romantic relationship for approximately 4 years prior to the incident. They had a child together who was almost 18 months old at the time of her mother's death. [Levan] and the victim were having difficulties in the months prior to the incident. A protective order had been issued against [Levan] restricting his contact with the victim and their daughter. [Levan] testified that he and the victim "patched things up" a few days after the protective order was issued. However, [Levan] was also having a romantic relationship with another woman during this period.
>
> [Levan] testified that he went to the victim's house at her invitation at approximately 11:30 p.m. on October 20, 2000. He had previously taken a shower at his girlfriend's house. Upon his arrival at the victim's house, [Levan] and the victim began arguing about his relationship with the other woman. [Levan] testified that he walked out of the house with the intention of leaving rather than continuing the argument. After starting his vehicle, [Levan] decided to go back inside the house to get some of his clothes. The clothing was located in a closet. [Levan] testified that he picked up a ".38 special" revolver which was located on the top shelf of the closet so that he could take it with him. He further testified that, when he attempted to place the revolver into his duffel bag, the victim attempted to grab it from him. He stated that the revolver accidently fired as he attempted to block the victim from grabbing the revolver. The victim subsequently died as a result of a single gunshot wound to her head and neck.
>
> The revolver recovered from the scene contained five rounds of ammunition, one of which had been fired. With respect to the revolver's origin, [Levan] testified that he found the revolver in the woods near a friend's house three days prior to the incident in question. He gave the revolver to the victim two days prior to her death for her protection. [Levan] testified that he showed the victim how to use the revolver. He further testified that he thought he had unloaded the revolver prior to putting it on the shelf in the closet. One of [Levan]'s friends testified that he observed [Levan] placing the revolver in the closet on the morning prior to the incident.
>
> Several crime lab analysts testified about tests performed on the revolver, the victim, and her clothing. The pathologist who performed the autopsy testified

3

that the bullet entered the left side of the victim's neck near the base of the skull. The bullet traveled left to right through the victim's neck on a slightly upward path. The bullet perforated the victim's spine during the course of its travel. The pathologist testified that, based on her findings, the range of fire was greater than three feet. Gunpowder residue was found on the palm of the victim's right hand and on her shirt collar. Tests performed on the revolver revealed that it stopped depositing residue at distances greater than six feet. Accordingly, the evidence showed that the range of fire between the revolver and the victim was a distance of three to six feet.

The State offered the testimony of an inmate who had been incarcerated with [Levan] after his arrest. The inmate is a "jailhouse lawyer" who assists other inmates in filing motions in their cases. He testified that [Levan] sought his assistance while awaiting trial. The inmate required [Levan] to provide him with all of the facts about [Levan]'s case in order to assist him. The inmate testified that [Levan] prepared a written statement of the events. The version of the events which [Levan] provided to the inmate differed from what [Levan] told the police and the jury. As per the inmate's version, [Levan] intentionally fired the revolver in order to scare the victim from calling the police. However, [Levan] did not intend for the bullet to strike her when he fired the revolver.

*Levan*, No. 11-01-00219-CR.

## III.    ISSUES

The Court understands Levan to allege that he is entitled to relief on the following grounds:

> (1) His Sixth and Fourteenth Amendment rights were violated because:
>> a. One juror admitted he could not consider the full range of punishment,
>>
>> b. Another juror withheld information that he was related to the District Attorney, and
>>
>> c. All jurors heard evidence from a. One juror the victim's father that was not authorized by the judge.
>
> (2) He is actually innocent.
>
> (3) Trial counsel was ineffective:
>> a. During voir dire,

4

    b. For failing to move for a new trial based on violations during voir dire,

    c. For cumulative errors,

    d. For not investigating Jimmy Ruiz,

    e. For not hiring an expert to test the evidence,

    f. For failing to investigate the case, and

    g. For failing to protect Levan's rights to a fair trial

(4) The State engaged in prosecutorial misconduct by conspiring to fabricate a story to convict Levan and failing to disclose Rick Williams's affidavit.

Pet. 6–7, ECF No. 1; Brief 12–36, ECF No. 2.

## IV.   ANALYSIS-Statute of Limitations

### A.   Applicable Law

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively

>applicable to cases on collateral review; or
>
>(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)–(2).

As an initial matter, the record does not indicate that any unconstitutional "State action" prevented Levan from filing for federal habeas corpus relief prior to the end of the limitations period. *See* 28 U.S.C. § 2244(d)(1)(B). Also, Levan's claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. *See* 28 U.S.C. 2244(d)(1)(C).

Levan argues, however, that his § 2254 petition should be considered timely under 28 U.S.C. § 2244(d)(1)(D) because he did not discover the factual predicate date of his claims until October 25, 2021. Pet. at 6, 9, ECF No. 1; Brief 5–6, ECF No. 2. Specifically, Levan relies on an affidavit from Rick Williams—a former Detention Officer at the Palo Pinto County Jail—in which Williams discusses Jimmy Ruiz's "conspiracy to obtain a statement from Levan." Pet. 12, ECF No. 1. Levan claims that Williams's affidavit proves that Levan is actually innocent. *Id.* at 6–7. But Levan's argument confuses the factual predicate (i.e., Levan's purported innocence, which he would necessarily have known when he was convicted), with his purported proof thereof. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("[Petitioner] is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering

evidence in support of that claim"); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("[T]he time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner.")

At trial, Ruiz testified to statements made by Levan to him while incarcerated together. 6 RR 48–84, ECF No. 14-7.[6] Ruiz testified that Levan shot his wife by accident while trying to scare her from calling the police. *Id.* at 57–59. Levan also admitted to shooting his wife and claimed that it was an accident. SHCR-01 at 35, ECF No. 14-21; 6 RR 174–84, 191, 198–201, ECF No. 14-7. Levan's statements to, and the resulting testimony by Ruiz, supported Levan's defense that the shooting was an accident. SHCR-01 at 35; ECF No. 14-21; 6 RR 48–84, 174–84, 191, 198–201, ECF No. 14-7.

Williams's affidavit—alleging that Ruiz received a deal from the State for his testimony—does not raise fact issues related to Levan's innocence. Pet. at 12–13, ECF No. 1. And Williams's knowledge of the events contained in his affidavit were known to him prior to Levan's trial, and well before Levan's conviction became final. Pet 12, ECF No. 1. Further, in denying Levan's state habeas application, the state court explicitly found that Levan failed to explain any attempts he made to locate Rick Williams before October 25, 2021, and that both the lead prosecutor and detective on Levan's case denied the allegations made in Williams's affidavit. SHCR-01 (state court's findings of fact 19 and 39) at 33,35, ECF No. 14-21.

Levan could have discovered the factual predicate of his claims through reasonable investigation prior to his trial in 2001, before his conviction became final in 2003, and before the

---

[6] "RR" refers to the Reporter's Record of trial court proceedings in cause number 11,625 preceded by the volume number and followed by the relevant page numbers.

applicable federal statute of limitations expired. Ultimately, Levan has not shown that he could not have discovered the factual predicate of his claims or this evidence prior to the conclusion of direct review and the finality of his conviction. *See* 28 U.S.C. § 2244(d)(1)(A). Accordingly, the date the limitations period began to run on Levan's claims is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

After his conviction, Levan appealed to the Eleventh Court of Appeals of Texas which affirmed the judgment of the trial court. *Levan*, No. 11-01-00219-CR. The TCCA subsequently refused Levan's petition for discretionary review (PDR) on March 5, 2003. *Levan*, PD-2167-02. Thus, Levan's conviction became final ninety days later—on June 3, 2003—when the time for filing a petition for writ of certiorari with the Supreme Court expired. *See Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003) (finality determined by expiration of time for filing further appeals); Sup. Ct. R. 13.1 (a petition for a writ of certiorari to review a judgment entered by a state court of last resort is timely when it is filed within 90 days after entry of the judgment). Thus, absent any tolling, the one-year limitations period for filing a federal petition ended in June 2004.

B.   **Statutory Tolling of the Limitations Period**

Levan signed his state habeas application challenging his holding conviction on March 28, 2022. SHCR-01 at 26, ECF No. 14-20.  An application filed in state court after the limitations period has expired, however, does not operate to statutorily toll the limitations period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).  Thus, Levan is not entitled to statutory tolling for the pendency of his state habeas application. *Palacios v. Stephens*, 723 F.3d 600, 604

(5th Cir. 2013); *Scott*, 227 F.3d at 263. Levan's § 2254 petition, constructively filed on January 10, 2023, is almost nineteen years too late and must be dismissed absent any application of equitable tolling. Pet. 10, ECF No. 1.

      **C.**      **Equitable Tolling of the Limitations Period**

Equitable tolling should be applied only in "rare and exceptional circumstances." *Felder v. Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). More specifically, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Grooms v. Johnson*, 208 F.3d 488, 489–90 (5th Cir. 1999) (citing *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)). Nothing in the record suggests the State misled Levan.

In order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief." *Coleman*, 184 F.3d at 403. Levan has failed to show that he diligently pursued relief as he waited nineteen years after his conviction became final to file a state habeas application and another month after the CCA's denial to seek federal review. Even after discovering the alleged new evidence in Williams's October 2021 affidavit, Levan waited five months to seek state review of his claims. SHCR-01 at 26, ECF No. 14-21. Indeed, "[e]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (citing *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)).

Further, ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not excuse prompt filing. *See Felder*, 204 F.3d at 171; *see also United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (neither an inmate's illiteracy, deafness, or

lack of legal training amounts to factors external to the inmate to excuse an abuse of the writ); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996) (a petitioner's lack of interest in challenging prior convictions was not cause to excuse a procedural default); *Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992) (holding neither prisoner's pro se status nor ignorance of the law constitutes "cause" for failing to include a legal claim in his prior petition). Thus, Levan is not entitled to equitable tolling of the limitations period.

### D. Levan's Actual Innocence Claim Fails to meet the Requirements of *McQuiggin v. Perkins.*

The Supreme Court has held that the AEDPA statute of limitations can be overcome by a showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 384 (2013). To the extent that Levan claims he is actually innocent, his claims fail to meet the McQuiggin standard. Pet. 6–7, ECF No. 1; Brief 5–6, ECF No. 2.

In *McQuiggin*, the Supreme Court held that tenable claims of actual innocence serve as a gateway through which the petitioner may pass, allowing his underlying constitutional claims to be considered despite being raised outside the AEDPA statute of limitations. 569 U.S. at 386. However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995), and citing *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met)).

In this context, newly discovered evidence of a petitioner's "[a]ctual innocence" refers to factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998)

10

(citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 340. And while diligence is not a discrete requirement, the timing of the federal habeas petition bears on the credibility of the evidence proffered to show actual innocence. *See McQuiggin*, 569 U.S. at 399–400. Ultimately, "[t]he miscarriage of justice exception . . . applies to a severely confined category" of otherwise untimely claims. *Id*. at 395.

Levan claims that Williams's affidavit proves his innocence, because "the crime didn't happen how the STATE witness Jimmy Ruiz stated." Pet. 6, ECF No. 1. Specifically, Levan alleges that Williams's affidavit proved that Ruiz made up a story with the District Attorney and Sheriff to convict him. *Id.* Levan contends that Ruiz did so to get "a favorable deal on his charges." *Id.* But Levan's contentions are directed at the legal sufficiency of the evidence, not his factual innocence. Thus, Levan fails to provide evidence sufficient to show that it is more likely than not that no reasonable juror could have convicted him in light of such evidence. *See McQuiggin*, 569 U.S. at 401 ("We stress once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'") (quoting *Schlup*, 513 U.S. at 316).

Further, Levan must show that the alleged "newly-discovered evidence" was not known to him at the time of trial and could not have been known to him even with the exercise of due diligence. *See McQuiggin*, 569 U.S. at 400– 401. As discussed *supra*, although Williams did not execute his affidavit until 2021, the information contained in his affidavit was known to him in 2001—before Levan's trial. Pet. 12–13, ECF No. 1. Furthermore, Levan's claim that he is

innocent of the charge of murder is an argument that would have been available to and known by him at the time of trial—it was part of the defense of accident presented at trial. For these reasons, Levan fails to meet the *McQuiggin* standard of factual innocence.

In sum, Levan fails to meet the standard of factual innocence, and the petition under § 2254 must be dismissed with prejudice as barred by the applicable statute of limitations for all of the reasons otherwise explained.

### V. ALTERNATIVE ANALYSIS - Merits of Ground Four

As noted above, in ground four, Levan alleges that the State engaged in prosecutorial misconduct because it conspired with Ruiz to fabricate a story to convict Levan of murder and withheld Williams's affidavit from the defense in violation of *Brady v. Maryland*. Pet. 7, ECF No. 1; Brief 3, ECF No. 2; *Brady v. Maryland*, 373 U.S. 83 (1963). This ground four is the only substantive claim that could arguably not be barred by limitations if the Court were to find that Williams's affidavit does provide a new factual predicate date to consider this claim. But, even if the Court alternatively considers ground four on the merits, that ground is denied for the alternative reasons stated in the preliminary answer Section II A through B, at pages 16 through 24. Answer, 16-24, ECF No. 13. As explained therein, Levan fails to overcome the AEDPA's re-litigation bar, as he has failed to demonstrate that the state trial court's resolution of ground four was unreasonable. SHCR-01, 30-41 (Order Adopting State's Proposed Findings of Fact and Conclusion and Proposed Findings of Facts and Conclusions of Law), ECF No. 14-21. Thus, ground four is alternatively denied on the merits.

## VI.     CONCLUSION and ORDER

It is therefore **ORDERED** that all grounds for relief in Charles Lee Levan, Jr's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 are **DISMISSED** with prejudice as time-barred, and alternatively, ground four is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this **26th day** of **September, 2023.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE